[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10632

_____

D.C. Docket No. 6:14-cv-00516-GKS-GJK

LOUBNA ELKAOUSI MENDOZA,

Plaintiff - Appellant,

HASSAN ELKAOUSSI, et al.,

Plaintiffs,

versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
DIRECTOR, US CITIZENSHIP AND IMMIGRATION SERVICES,
DISTRICT DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES,
TAMPA, FLORIDA,
FIELD OFFICE DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES,
ORLANDO, FLORIDA,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 3, 2017)

Before TJOFLAT, HULL, and O'MALLEY,[*] Circuit Judges.

PER CURIAM:

Plaintiff Loubna Elkaoussi Mendoza appeals the district court's order granting summary judgment to the defendants. Mendoza filed a Form I-130, Petition for Alien Relative, seeking an immigrant visa for her alien father, Hassan Elkaoussi. The United States Citizenship and Immigration Services ("CIS") denied Mendoza's petition, and Mendoza filed this federal action seeking review of CIS's decision. On appeal, Mendoza contends that CIS's decision is unsupported by substantial evidence, is arbitrary and capricious, and is otherwise not in accordance with law. After review of the record and the parties' briefs, and with the benefit of oral argument, we affirm.

## I. BACKGROUND

Mendoza was born in Morocco in 1986 and became a naturalized United States citizen in 2009. At the time of her birth, Mendoza's father, Elkaoussi, was married to Mendoza's biological mother, Hafida Serrar. Elkaoussi and Serrar divorced in 2002.

---

[*]Honorable Kathleen M. O'Malley, United States Circuit Judge for the Federal Circuit, sitting by designation.

**A.    Smith's 2004 Petition on Behalf of Elkaoussi**

On January 12, 2004, Elkaoussi married Joyce Smith, a United States citizen.[1]  Smith was previously married to Said Aldi Hussein, but that marriage ended in 2003.

About one month after marrying Elkaoussi, Smith filed an I-130 petition seeking an immigrant visa for Elkaoussi based on his status as her spouse.  Smith and Elkaoussi submitted evidence supporting the bona fides of their marriage, including a letter from Smith's father stating that Smith and Elkaoussi lived together in his home, pictures of Smith and Elkaoussi together, joint bank statements, joint car insurance documents, other bills, and affidavits from acquaintances who could attest to the nature of Smith and Elkaoussi's relationship.

On June 28, 2006, Smith and Elkaoussi appeared for an interview with CIS regarding the 2004 petition.  In October 2007, while the 2004 petition was still pending, Smith and Elkaoussi divorced.  On May 6, 2010, because of that 2007 divorce, CIS denied Smith's 2004 petition.

**B.    Mendoza's 2009 and 2012 Petitions on Behalf of Elkaoussi**

On December 20, 2009, after Smith and Elkaoussi's divorce but before CIS denied Smith's 2004 petition, Mendoza filed an I-130 petition on behalf of

---

[1]The certificate of marriage bore the signature of the person who performed the marriage ceremony, but it did not include signatures of any witnesses to the ceremony.

Elkaoussi based on his status as her father.  CIS denied that petition because Mendoza and Elkaoussi failed to appear for an interview.

On March 19, 2012, Mendoza filed another I-130 petition on behalf of Elkaoussi.  On February 19, 2013, CIS requested evidence regarding Mendoza's paternal relationship with Elkaoussi.  Mendoza responded by submitting her birth certificate and a marriage certificate documenting the marriage between Elkaoussi and Mendoza's mother.

On April 8, 2014, Mendoza and Elkaoussi appeared for an interview with CIS, during which a CIS officer separately asked each of them about Elkaoussi's marriage to Smith.  The CIS officer asked Mendoza if she knew Elkaoussi's whereabouts in 2006, whether Mendoza ever met Smith, and who lived with Elkaoussi from 2006 to 2012.  On the advice of counsel, Mendoza chose not to answer these questions.

The CIS officer also asked Elkaoussi why he divorced Smith.  On the advice of counsel, Elkaoussi chose not to answer this question.

On June 2, 2014, CIS sent Mendoza a notice of intent to deny the 2012 petition (the "NOID").  The NOID explained that federal immigration law prohibits granting an immigrant visa to anyone who previously sought a visa on the basis of a fraudulent marriage and that CIS doubted the validity of Elkaoussi's previous marriage to Smith.  In the NOID, CIS identified several issues with the

evidence that Smith submitted in conjunction with her 2004 petition: (1) the letter from Smith's father, which stated that Smith and Elkaoussi lived together in his residence, was unsigned; (2) the bank statements listed Smith and Elkaoussi's address as a P.O. Box rather than a residential address; and (3) the affidavits from Smith and Elkaoussi's acquaintances included no details about when and where the affiants met Smith and Elkaoussi. In addition, the NOID noted that, at the April 8, 2014 interview, Mendoza and Elkaoussi refused to answer the CIS officer's questions about this previous marriage to Smith.

The NOID advised that Mendoza "failed to establish that [her] father's marriage to [Smith] was not entered into solely for the purpose of circumventing the immigration laws of the United States." CIS directed Mendoza to respond to the NOID with an explanation of why the petition should not be denied and to submit any evidence that established the validity of Elkaoussi's marriage to Smith.

## C. CIS Denies Mendoza's 2012 Petition

On June 27, 2014, Mendoza responded through counsel, arguing that the NOID lacked substantive and probative evidence of marriage fraud and requesting that CIS grant Mendoza's petition. Mendoza's response did not provide any additional evidence regarding Elkaoussi's marriage to Smith.

On July 17, 2014, CIS denied Mendoza's 2012 petition. In its denial decision, CIS explained that it was obliged to conduct an independent investigation

regarding Elkaoussi's marriage to Smith regardless of whether CIS made a previous finding of marriage fraud in connection with Smith's 2004 petition. CIS acknowledged that it was "not making its determination based on [the marriage-fraud bar in 8 U.S.C. § 1154(c)]." Even so, CIS determined that the marriage-fraud bar "clearly prohibits approval of a visa petition filed on behalf of an alien who has attempted or conspired to attempt to enter into" a fraudulent marriage.

CIS also stated that, because Mendoza failed to adequately respond to the interview questions and the NOID, CIS had "no choice but to determine that the information presently before us is insufficient to enable us to determine[] whether or not the beneficiary's marriage was undertaken to evade the immigration laws." Thus, CIS denied Mendoza's 2012 petition because Mendoza failed to carry her burden of proving that Elkaoussi was eligible for an immediate-relative visa.

Mendoza then filed this federal action seeking review, under the Administrative Procedure Act (the "APA"), of CIS's denial of the 2012 petition. Mendoza and the defendants filed cross-motions for summary judgment.

The district court granted the defendants' summary judgment motion and denied Mendoza's. First, the district court rejected Mendoza's argument that CIS violated her due process rights by failing to provide adequate notice of the grounds on which it denied her 2012 petition. Mendoza does not challenge this finding on appeal.

6

Second, the district court determined that CIS's denial of the 2012 petition was not arbitrary and capricious or contrary to law and that the decision was supported by substantial evidence. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, considering the evidence and the inferences therefrom in the light most favorable to the nonmoving party. Ellis v. England, 432 F.3d 1321, 1325 (11th Cir. 2005) (per curiam). Summary judgment is appropriate where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute where the evidence would allow a reasonable jury to find in favor of the nonmoving party. Ellis, 432 F.3d at 1325-26.

Under the APA, an agency action, finding, or conclusion can be set aside where it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). This standard is "exceedingly deferential." Defs. of Wildlife v. U.S. Dep't of Navy, 733 F.3d 1106, 1115 (11th Cir. 2013) (quoting Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541(11th Cir. 1996)).

To determine whether the agency's action was arbitrary and capricious, we examine whether the agency came to a rational conclusion and do not substitute

7

our own judgment for that of the agency. Id. We set aside an agency action as arbitrary and capricious only where (1) the agency "relied on factors which Congress has not intended it to consider," (2) the agency "failed to consider an important aspect of the problem," (3) the agency explained its decision in a way "that runs counter to the evidence," or (4) the action "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Id. (quoting Miccosukee Tribe of Indians of Fla. v. United States, 566 F.3d 1257, 1264 (11th Cir. 2009)).

The "substantial evidence" standard is "no more than a recitation of the application of the 'arbitrary and capricious' standard to factual findings." Fields v. U.S. Dep't of Labor Admin. Review Bd., 173 F.3d 811, 813 (11th Cir. 1999) (per curiam).

## III.  DISCUSSION

On appeal, Mendoza maintains that CIS's decision denying her 2012 petition was arbitrary and capricious and otherwise not in accordance with law because CIS misconstrued the relevant burdens of proof and failed to make a final determination as to whether Elkaoussi was ineligible by reason of the § 1154(c) marriage fraud-bar. Mendoza also contends that CIS's denial of her 2012 petition is not supported by substantial evidence because she carried her burden of showing

8

that Elkaoussi was eligible for an immediate-relative visa.  After a brief review of the relevant statutory and regulatory principles, we address Mendoza's arguments.

## A.    Legal Principles Governing Immigrant Relative Visas

Under the Immigration and Nationality Act ("INA"), an alien may obtain an immigrant visa by virtue of his immediate familial relationship with a United States citizen.  See 8 U.S.C. § 1151(b)(2)(A)(i) (defining "immediate relatives" to include children, spouses, and parents of United States citizens); id. § 1154 (setting forth the procedure for granting immigrant status).  To obtain an immigrant visa for an immediate relative, the United States citizen must file a Form I-130, Petition for Alien Relative.  Id. § 1154(a); 8 C.F.R. § 204.1(a)(1).

To prevail on such a petition seeking immigration status for a parent, the petitioner must produce evidence showing that she is a United States citizen over the age of twenty-one and that the beneficiary alien is her parent.  8 C.F.R. § 204.2(f).  The petitioner bears the burden of showing that the alien beneficiary is eligible for the immigrant visa.  8 U.S.C. § 1361 ("Whenever any person makes an application for a visa . . . the burden of proof shall be on such person to establish that [the beneficiary] is eligible to receive such visa . . . or is not inadmissible under any provision of this chapter."); Matter of Brantigan, 11 I. & N. Dec. 493, 495 (B.I.A. 1966) ("In visa petition proceedings, the burden of proof to establish

9

eligibility sought for the benefit conferred by the immigration laws rests upon the petitioner.").

The INA prohibits the approval of any visa petition filed on behalf of a petitioner who has previously sought a visa by reason of a fraudulent marriage. The statute provides:

> [N]o petition shall be approved if (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). The implementing regulations further provide that the CIS district director "will deny" an I-130 petition where there is "substantial and probative evidence" of an attempt or conspiracy to enter into a fraudulent marriage. 8 C.F.R. § 204.2(a)(1)(ii); see 8 C.F.R. § 1.2 (defining "director" to include district director).

In determining whether the marriage was fraudulent, the relevant inquiry is whether the "bride and groom intended to establish a life together at the time they were married." Matter of Laureano, 19 I. & N. Dec. 1, 2-3 (B.I.A. 1983). Evidence of such intent may be found in insurance policies, property leases, income tax forms, and bank accounts. Id. at 3. Also relevant is any evidence

10

regarding the marriage ceremony, courtship, residences, and shared experiences. Id. Rather than relying on any previous findings regarding the bona fides of the alien beneficiary's previous marriage, CIS should make an independent determination based on any relevant evidence, including evidence derived from previous CIS proceedings. Matter of Tawfik, 20 I. & N. Dec. 166, 168 (B.I.A. 1990).

If the evidence submitted with a visa petition is insufficient to establish the beneficiary's eligibility, the CIS district director may issue a notice of intent to deny the petition, which sets forth the basis for the proposed denial and directs the petitioner to respond with additional evidence. 8 C.F.R. § 103.2(b)(8)(iii). If there is reason to doubt the validity of the beneficiary's previous marriage, the petitioner must come forward with evidence showing that the marriage was not entered for the purpose of circumventing immigration laws. Matter of Laureano, 19 I. & N. Dec. at 3; 8 C.F.R. § 103.2(b)(11) (outlining the procedure for responding to a notice of intent to deny).

## B.    Analysis

Here, we conclude that CIS's decision denying Mendoza's 2012 petition was not arbitrary and capricious or otherwise contrary to law. Mendoza and the defendants espouse conflicting interpretations of the way that the § 1154(c)

marriage-fraud bar interacts with the petitioner's burden to prove the beneficiary's ultimate eligibility under § 1361.

Mendoza in essence urges us to conclude that § 1154(c) creates a burden shifting scheme wherein the petitioner first must prove that the beneficiary is eligible as an immediate relative of a United States citizen, and then CIS must conclusively determine that the beneficiary is ineligible by reason of previous marriage fraud. Because CIS did not make such a conclusive determination here, Mendoza argues that her petition should be granted.

CIS conceptualizes the statutory and regulatory scheme differently. Under the evidence relevant to Mendoza's petition, CIS determined that Mendoza's petition could not succeed because there was reason to doubt whether Elkaoussi could surmount § 1154(c)'s marriage-fraud bar. In this sense, CIS treated the marriage-fraud bar as subsumed within Mendoza's overall burden to prove eligibility under § 1361. Thus, because Mendoza failed to assuage CIS's concerns about Elkaoussi's marriage to Smith, Mendoza failed to show that Elkaoussi was eligible for a visa.

It is true, as Mendoza notes, that § 1154(c) indicates that the marriage-fraud bar applies where the attorney general "determine[s]," based on "substantial and probative evidence" that the beneficiary previously sought a visa based on a marriage entered into for the purpose of circumventing the immigration laws.

8 U.S.C. § 1154(c) (emphasis added); 8 C.F.R. § 204.2(a)(1)(ii). But this dictate must be read in conjunction with § 1361, which puts the onus on the petitioner to show that the beneficiary is "eligible" for a visa. And it is reasonable to conclude that, where there is unrebutted evidence suggesting that the beneficiary previously sought a visa by operation of a fraudulent marriage, the petitioner failed to carry her burden of proving the beneficiary's ultimate eligibility. See Defs. of Wildlife, 733 F.3d at 1115 (stating that the agency's action should not be disturbed where the agency came to a "rational conclusion.").

The Board of Immigration Appeals decisions on which Mendoza relies do not compel a contrary conclusion. Those decisions discuss what evidence will sustain a finding that the beneficiary is ineligible under the marriage-fraud bar, but none of them holds that CIS is bound to make a conclusive determination of marriage fraud before denying a petition under circumstances akin to those presented here. See Matter of Tawfik, 20 I. & N. Dec. at 166-70 (concluding that the evidence was insufficient to support denial of a visa petition under the marriage-fraud bar where the only proof of marriage fraud was the fact that the beneficiary was living with his former wife, a non-citizen, rather than his current wife, the citizen-petitioner, while the visa petition was pending); Matter of Rahmati, 16 I. & N. Dec. 538, 538-39 (B.I.A. 1978) (reversing denial of a visa petition where CIS failed to determine independently whether the beneficiary

13

entered into a fraudulent marriage and instead erroneously relied on an immigration judge's previous ruling rescinding the beneficiary's permanent resident status for different marriage-related reasons); Matter of Samsen, 15 I. & N. Dec. 28, 28-30 (B.I.A. 1974) (same).

In fact, the language of one of the decisions on which Mendoza relies indicates that the mere presence of evidence in the record suggesting that the marriage-fraud bar applies, rather than a definitive finding of previous marriage fraud, is sufficient to require the petitioner to prove that the marriage-fraud bar does not apply. Matter of Kahy, 19 I. & N. Dec. 803, 806-07 (B.I.A. 1988) ("[W]here there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage.") (emphasis added). In short, Mendoza fails to show how CIS's denial of her visa petition was arbitrary and capricious or otherwise not in accordance with law. See 5 U.S.C. § 706(2)(A).

As a practical matter, the approach that Mendoza advocates would hobble CIS in its efforts to implement effectively the immediate-relative visa process. Like the district court, we note that accepting Mendoza's view—that CIS must either make a final determination of marriage fraud or grant the petition—would force CIS to grant visa petitions "even when [CIS] harbors doubts about a

14

petitioner's eligibility and is unable to definitively resolve those doubts."  If Mendoza's approach controlled, visa applicants could circumvent the marriage-fraud bar by refusing to answer CIS's questions about the bona fides of a previous marriage.  Such an approach would shift the ultimate eligibility burden from the petitioner to CIS in contravention of § 1361.  Here, CIS rationally determined that it was not required to grant a visa application where Mendoza and Elkaoussi failed to provide sufficient evidence to prove eligibility.  Mendoza and Elkaoussi were free to refuse to answer CIS's questions about Elkaoussi's previous marriage, but they did so at their own peril.

Under the APA, we are concerned only with whether CIS reached a rational conclusion.  Defs. of Wildlife, 733 F.3d at 1115.  Applying this deferential brand of review, we conclude that CIS's decision denying Mendoza's 2012 petition was not arbitrary and capricious or otherwise not in accordance with law.  See id.; 5 U.S.C. § 706(2)(A).

Additionally, we conclude that CIS's decision denying Mendoza's 2012 petition was supported by substantial evidence.  Mendoza did establish that she is a United States citizen and that Elkaoussi qualifies as an immediate relative.  But the evidence regarding Elkaoussi's marriage to Smith was sufficient to support CIS's doubts about the marriage's validity, and thus was also sufficient to support denial of the visa petition for failure to prove Elkaoussi's ultimate eligibility.  Given the

15

irregularities in the letters, affidavits, and joint bank statements submitted in connection with Smith's 2004 petition, and in light of Mendoza's and Elkaoussi's refusal to answer questions about the previous marriage, CIS came to the rational conclusion that Mendoza failed to prove that Elkaoussi was eligible for a visa. See Defs. of Wildlife, 733 F.3d at 1115; Fields, 173 F.3d at 813.

## IV.  CONCLUSION

Accordingly, we affirm the district court's order granting summary judgment to the defendants and denying Mendoza's cross-motion for summary judgment.

**AFFIRMED.**