[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13215
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-01211-MMH-MCR


SIGITAS BRINKLYS,
AURELIJA CARUSO,

Plaintiffs-Appellants,

versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
U.S. ATTORNEY GENERAL,
DIRECTOR, CITIZENSHIP AND IMMIGRATION SERVICES,
DIRECTOR, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 17, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiffs Sigitas Brinklys and Aurelija Caruso ("Aurelija") appeal the district court's grant of summary judgment in favor of the defendants following the denial of Brinklys's I-130 petition seeking an immigrant visa on behalf of his spouse, Aurelija. The United States Citizenship and Immigration Service ("CIS") denied the petition after concluding that Aurelija had previously entered into a fraudulent marriage for the purpose of evading immigration laws. On appeal, Plaintiffs argue that (1) the CIS violated its own regulations and Brinklys's due process rights by providing insufficient notice of the denial, and (2) the record did not support the marriage fraud determination that prevented Brinklys's visa petition from being granted. After careful review, we affirm.

## I.    **BACKGROUND**

### A.    **Factual Background**

Aurelija and Raimondas Kalinauskas, both citizens of Lithuania, arrived in the United States on visitor's visas on February 10, 2000, with permission to stay until August 9, 2000. Their visa applications listed the same intended address in Blissfield, Ohio.

On February 21, 2003, Aurelija married United States citizen Frank Caruso in Illinois. Approximately one month later, Kalinauskas married Luzmaria

2

Martinez, also a United States citizen.  On May 19, 2002, Martinez and Caruso both filed I-130 petitions seeking immigrant visas for Kalinauskas and Aurelija, respectively.  In his petition, Caruso represented that he and Aurelija had lived together on Arapahoe Court in Naperville, Illinois since February 2003.  In 2007, before the CIS adjudicated their petition, Caruso and Aurelija divorced.

In the meantime, U.S. Immigration and Customs Enforcement issued an internal memorandum concluding that Caruso and Aurelija's marriage was entered into for the purpose of evading immigration laws.  In support of this determination, the memorandum made the following findings and observations.  At their immigration interview in September 2005, Caruso and Aurelija claimed to live together at the same address.  However, Caruso's state identification bearing that address was issued only three days before the immigration interview.  Moreover, an Illinois police report from February 2005 revealed that during an investigation pertaining to an unrelated criminal matter, state law enforcement officers encountered Kalinauskas and Aurelija at the same address.  According to the police report, Kalinauskas told officers that Aurelija was his girlfriend, and both Aurelija and Kalinauskas admitted that they lived together and not with their U.S. citizen spouses.  Property records were obtained for that address and showed that Aurelija and Kalinauskas purchased the property in 2003, and had identified themselves as husband and wife.  Moreover, agents interviewed Caruso's mother, who stated that

3

Caruso was not married and lived in an apartment in Carol Stream, Illinois. A subsequent review of Caruso's lease agreement for that apartment showed that Caruso had listed his marital status as single and the only additional occupant as Caruso's son. Finally, agents interviewed Kalinauskas's U.S. citizen spouse, who admitted that her marriage to Kalinauskas was a sham and that she had been paid approximately $1,700 to marry him. Based on these findings, U.S. Immigration and Customs Enforcement concluded that Aurelija's marriage to Caruso was not legitimate.

On November 2, 2007, Aurelija married Brinklys in Palm Coast, Florida. Brinklys later filed an I-130 petition for alien relative on behalf of Aurelija. The petition stated that Brinklys and Aurelija had lived together since December 2005 on Seagirt Court in Palm Coast, Florida.

On May 23, 2011, the CIS issued a notice of intent to deny, informing Brinklys that the CIS intended to deny his petition. The CIS explained that it believed Aurelija's prior marriage to Caruso was fraudulently entered into for the purpose of obtaining immigration benefits. The CIS described the information—obtained from the police report, the property records, the lease agreement, and the statements of Caruso's mother and Kalinauskas's U.S. citizen wife—that had led the CIS to question the validity of Aurelija's prior marriage to Caruso. The CIS

also stated that it suspected Brinklys and Aurelija's marriage to be fraudulent.  The CIS provided Brinklys and Aurelija with thirty days to respond to the notice.

After Brinklys filed a response, the CIS denied his petition.  The CIS explained that the record showed that Aurelija's prior marriage to Caruso was fraudulent, as Aurelija and Caruso did not live together, Aurelija lived with Kalinauskas, property records showed that Aurelija and Kalinauskas purchased property together as husband and wife, Caruso's mother told investigators that Caruso was not married, and Kalinauskas's U.S. citizen wife admitted that she married Kalinauskas for money.  Moreover, Aurelija had told officers at the time of Kalinauskas's arrest that they had been friends for eight years.  However, she later contradicted this statement during her interview with immigration officials by claiming that Kalinauskas was her step-brother.

The CIS reviewed Brinklys's response but concluded that he had failed to overcome the suspicion that Aurelija's prior marriage to Caruso was fraudulent, and had also failed to establish that Aurelija and Brinklys had a bona fide marriage. The CIS consequently denied the petition under 8 U.S.C. § 1154(c), a provision that bars an alien beneficiary from obtaining a visa if the alien beneficiary has previously entered a fraudulent marriage for the purpose of obtaining immigration benefits.

5

Plaintiffs appealed the CIS's decision to the BIA.  They asserted that the CIS failed to provide substantial and probative evidence establishing that Aurelija's prior marriage to Caruso was fraudulent.  They also argued that overwhelming evidence established that both of Aurelija's marriages were bona fide.

After conducting a *de novo* review, the BIA affirmed the denial of Brinklys's I-130 petition and dismissed the appeal.  First, the BIA agreed that substantial and probative evidence established that Aurelija had entered into a fraudulent marriage with Caruso.  The BIA explained that the evidence showed that Caruso and Aurelija did not live together, Kalinauskas and Aurelija had purchased and refinanced property together, in which they identified themselves as husband and wife, and Caruso's mother had stated that Caruso was not married. The BIA rejected Plaintiffs' argument that the police report was unreliable based on Aurelija's poor command of the English language because the report did not mention Aurelija's inability to communicate in English, nor did Aurelija provide any evidence supporting this contention.

The BIA next addressed Plaintiffs' argument that they were not provided with the police report, property records, or the marriage fraud investigation reports referenced in the notice of intent to deny.  The BIA concluded that the CIS provided Plaintiffs with sufficient information, as the CIS is only required to provide petitioners with notice of the information that forms the basis for the denial

of the petition.  Stated another way, there is no requirement that the CIS provide the actual documents that led to that decision.  Finally, the BIA affirmed the CIS's determination that Brinklys and Aurelija had failed to establish that they entered into a bona fide marriage.

## B.    Procedural History

In October 2014, Plaintiffs filed a federal action against the Secretary of the Department of Homeland Security, the U.S. Attorney General, the Director of the CIS, and the Director of the Executive Office for Immigration Review.  Plaintiffs filed the complaint pursuant to the Administrative Procedure Act ("APA"), and challenged the BIA's decision affirming the CIS's denial of Brinklys's visa petition filed on behalf of Aurelija.  Both parties filed cross-motions for summary judgment.

The district court granted Defendants' motion for summary judgment and denied Plaintiffs' cross-motion for summary judgment.  The district court rejected Plaintiffs' argument that they were entitled to the documents containing the "derogatory information" that the CIS relied upon in concluding that Aurelija's marriage to Caruso was fraudulent.  The district court also determined that the CIS's conclusion that Aurelija and Caruso's marriage was fraudulent was not arbitrary and capricious, and was supported by substantial evidence.  Given that Brinklys's visa petition was subject to denial based on the finding that Aurelija's

prior marriage was fraudulent, the district court did not address the bona fides of Brinklys and Aurelija's marriage. This appeal followed.

## II.    DISCUSSION

### A.    Standard of Review

We review the district court's grant of summary judgment *de novo*. *O'Ferrell v. United States*, 253 F.3d 1257, 1265 (11th Cir. 2001). The burden is on the party moving for summary judgment to establish that no genuine issue of material facts exists, and we view all evidence and draw all reasonable factual inferences in favor of the nonmoving party. *Id.*

"Under the APA, an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial evidence.'" *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (11th Cir. 2017) (quoting 5 U.S.C. § 706(2)(A), (E)). This standard "provides the reviewing court with very limited discretion to reverse an agency decision." *Warshauer v. Solis*, 577 F.3d 1330, 1335 (11th Cir. 2009) (quotations omitted).

Under the arbitrary and capricious standard, we do not substitute our own judgment for the agency's decision. *Defenders of Wildlife v. U.S. Dep't of Navy*, 733 F.3d 1106, 1114–15 (11th Cir. 2013). Instead, we look only to whether the agency reached a rational conclusion. *Id.* "We set aside an agency action as

arbitrary and capricious only where (1) the agency relied on factors which Congress has not intended it to consider, (2) the agency failed to consider an important aspect of the problem, (3) the agency explained its decision in a way that runs counter to the evidence, or (4) the action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mendoza*, 851 F.3d at 1353 (quotations omitted).

### B.    Law Governing Alien Relative Visa Petitions

The Immigration and Nationality Act provides that "any citizen of the United States claiming that an alien is entitled to . . . an immediate relative status . . . may file a petition with the Attorney General for such classification." 8 U.S.C. § 1154(a)(1)(A)(i). The term "immediate relative" includes spouses of United States citizens. *Id.* § 1151(b)(2)(A)(i).

To obtain immediate relative status, a U.S. citizen petitioner must file a Form I-130 petition for alien relative on behalf of his spouse. 8 C.F.R. § 204.1(a)(1). The petitioner carries the burden of proof for establishing that his alien beneficiary is eligible for a visa. *See* 8 U.S.C. § 1361 ("Whenever any person makes [an] application for a visa . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa.").

### C.    Disclosure of Information under the Regulations

Plaintiffs first argue that the CIS violated its own regulations by failing to provide Plaintiffs with the "derogatory information" upon which it based the denial of Brinklys's I-130 petition.  Because the CIS determined that Plaintiffs were statutorily ineligible for the visa based on Aurelija's sham marriage to Caruso, Plaintiffs argue that the regulations required the CIS to disclose the information it relied upon in making this determination.  Plaintiffs also argue that Brinklys's due process rights were violated because he was not provided with sufficient notice or an opportunity to respond.

The regulations at issue provide that if the CIS determines that the petition will be denied based on "derogatory information" for which the petitioner is unaware, he "shall be advised of this fact and offered an opportunity to rebut the information and present information in his . . . own behalf before the decision is rendered."  8 C.F.R. § 103.2(b)(16)(i).  The CIS's determination that an applicant is statutorily ineligible for a visa "shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner."  *Id.* § 103.2(b)(16)(ii).

The CIS complied with these regulations by issuing Brinklys a notice of intent to deny his I-130 petition filed on behalf of Aurelija.  The notice of intent to deny explained the facts and information that led the CIS to question the validity of

Aurelija's marriage to Caruso, and provided Brinklys an opportunity to rebut that information and present information on his own behalf. In particular, the notice of intent to deny summarized the relevant details of a police report, property records, and statements of Caruso's mother and Kalinauskas's wife that supported a finding that Aurelija's prior marriage was a sham. Brinklys was able to offer a rebuttal and provide his own evidence in response, including specific explanations for the information contained in the police report and property records. Thus, the notice of intent to deny sufficiently advised Plaintiffs of the derogatory information that would form the basis for the denial of Brinklys's petition. *Cf. Ghaly v. I.N.S.*, 48 F.3d 1426, 1434–35 (7th Cir. 1995) (holding that the regulations do not require that the petitioner be provided an opportunity to view the actual evidence supporting the CIS's reasons for revoking a visa petition, only that the petitioner be provided sufficient information to put him on notice of the grounds for the revocation).

Because the CIS complied with the regulations, Plaintiffs cannot show that Brinklys's due process rights were violated. Contrary to Plaintiffs' arguments, they were not "blissfully unaware" of the allegations the CIS relied upon to conclude that Aurelija's prior marriage to Caruso was a sham. Again, the CIS issued a notice of intent to deny Brinklys's petition, which sufficiently detailed the evidence that supported the CIS's determination that Aurelija and Caruso's

11

marriage was fraudulent and specifically provided Brinklys the opportunity to submit rebuttal evidence and respond to the allegations regarding the prior fraudulent marriage.  Accordingly, the district court did not err by granting Defendants' motion for summary judgment on these claims.

### D.    Substantial and Probative Evidence of Marriage Fraud

Plaintiffs also assert that the record evidence does not support the BIA and the CIS's finding that Aurelija's prior marriage to Caruso was fraudulent.

Under the Immigration and Nationality Act's marriage-fraud bar, the CIS cannot approve a visa petition if it determines that a marriage, including a prior marriage, was fraudulently entered into for the purpose of obtaining immigration benefits.  *See* 8 U.S.C. § 1154(c).  The regulations provide that the CIS "will deny a petition for immigrant visa classification filed on behalf of an alien for whom there is substantial and probative evidence of such an attempt or conspiracy [to enter into a marriage for the purpose of evading immigration laws], regardless of whether that alien received a benefit through the attempt or conspiracy."  8 C.F.R. § 204.2(a)(1)(ii).

To determine whether a beneficiary's marriage is fraudulent, "the relevant inquiry is whether the 'bride and groom intended to establish a life together at the time they were married.'"  *Mendoza*, 851 F.3d at 1354 (quoting *Matter of Laureano*, 19 I. & N. Dec. 1, 2–3 (BIA 1983).  Where the validity of the marriage

is questioned, evidence that can support a finding that a marriage was not entered into for the purpose of evading immigration laws includes "proof that the beneficiary has been listed as the petitioner's spouse on any insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence and experiences." *Matter of Phillis*, 15 I. & N. Dec. 385, 387 (BIA 1975).

The BIA and the CIS did not act arbitrarily or capriciously in determining that substantial and probative evidence supported the finding that Aurelija and Caruso fraudulently married for the purpose of obtaining immigration benefits. In arriving at this conclusion, the BIA and the CIS considered the entire record, including among other things, the police report, the property records, the lease agreement, Caruso's mother's statements, and the statements of Kalinauskas's U.S. citizen spouse.

Although Aurelija and Caruso claimed to live together, the evidence showed otherwise. Caruso's mother told agents that Caruso was not married. Caruso also leased his own apartment, in which he listed his marital status as single and stated that the only other occupant of the apartment was his son. When Kalinauskas was arrested, Kalinauskas told officers that Aurelija was his girlfriend. Moreover, both Kalinauskas and Aurelija admitted to officers that they lived together and not with their U.S. citizen spouses.

13

Property records also showed that Aurelija and Kalinauskas purchased property together and had identified themselves as husband and wife. Further, Kalinauskas's U.S. citizen wife admitted to agents that her marriage to Kalinauskas was a sham and that she had been paid to marry him. What's more is that Kalinauskas and Aurelija had I-130 petitions filed on their behalf on the same day. The BIA and the CIS considered Brinklys's explanations for the issues identified in the notice of intent to deny, including Aurelija's poor command of the English language, that Caruso's mother did not know about their marriage, and that Caruso and Aurelija had marital difficulties, but they were unpersuaded. Based on the information gleaned from the property records, the police report, Caruso's lease agreement, and the statements of Caruso's mother and Kalinauskas's U.S. citizen wife, in conjunction with Plaintiffs' failure to provide persuasive explanations for the issues identified by the CIS, the BIA and the CIS rationally concluded that Aurelija's prior marriage to Caruso was entered for purpose of evading immigration laws.

Because we conclude that substantial and probative evidence supports the determination that Aurelija's prior marriage was fraudulent, and this conclusion bars the grant of the I-130 petition, we need not consider whether Aurelija and Brinklys entered a bona fide marriage.

14

## III.    <u>CONCLUSION</u>

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of Defendants and the denial of Plaintiffs' cross-motion for summary judgment.

**AFFIRMED**.