[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14340

_____

KEVIN GEOVANY JUAREZ-ESPANA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-299-935

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Kevin Geovany Juarez-Espana seeks review of the Board of Immigration Appeals's (BIA) final order affirming the Immigration Judge's (IJ) denial of asylum under the Immigration and Nationality Act (INA) § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3). Before and at his hearing before the IJ, Juarez-Espana asked for a continuance to obtain documents from the Guatemalan government to support his asylum application. The IJ denied his request, and the BIA upheld the denial. Juarez-Espana now argues that the BIA abused its discretion in doing so.

After careful review and with the benefit of oral argument, we agree that the BIA abused its discretion, and we accordingly grant Juarez-Espana's petition.

## I.    Factual and Procedural Background

Before turning to Juarez-Espana's arguments on appeal, we discuss Juarez-Espana's family history, then discuss the proceedings before the IJ and BIA.

### a.  Family History

Juarez-Espana's maternal great-grandfather, Julian Juarez, had seven children: one daughter, Rosenda, and six sons—Jeronimo, Rosendo, Marcedonio, Marcelo, Medardo, and Juan Pablo. Juan Pablo, Juarez-Espana's grandfather, had six children: three sons—Uber, Jhony, and Heyban—and three daughters—Alba Noelia, Oralia, and Belia. Belia is Juarez-Espana's mother.

Julian, who passed away in 2008, owned around 300 hectares of land in El Matasano, Guatemala. In 2006, he began planning for how he would leave this land to his children: Juan Pablo, Rosendo, and Medardo. Julian handwrote and signed a document where he transferred the property to Juan Pablo, but died before the document could be notarized.

In 2008, Juan Pablo met with his brother Rosendo, his sons Uber and Jhony, and his nephew Julio (Medardo's son).[1] At this 2008 meeting, Juan Pablo explained that he, Rosendo, and Julio would divide the land between the three of them. Rosendo refused and explained that he alone would occupy the land. Shortly after the meeting, Julio was murdered with his death certificate and autopsy report showing that he died from gunshot wounds. About eight months after Julio's murder, Juan Pablo, Uber, and Jhony were murdered with their death certificates also showing they died from gunshot wounds.[2] Years later, in 2016, Rosenda's son, Marvin, spoke with Juarez-Espana about trying to get part of the land back from Rosendo, and was later killed by a projectile from a firearm.

---

[1] Medardo was in jail, having been convicted of murdering his brother Marcelo. Juarez-Espana later testified that he believed Rosendo had murdered Marcelo and framed Merdado. Juarez-Espana also testified that both Jeronimo and Marcedonio left El Matasano for Peten, Guatemala. Marcedonio was killed after he left El Matasano for reasons unrelated to the family's land dispute.

[2] There is no evidence in the record as to Heyban's current whereabouts.

### b.  Removal Proceedings before the IJ

Juarez-Espana entered the United States as a minor in 2016. He received a Notice to Appear (NTA) that charged him with removability under 8 U.S.C. § 1182(a)(6)(A)(i) of the INA in 2017.  In October 2018 at a master hearing[3]—his first appearance in his proceedings—Juarez-Espana admitted the factual allegations in the petition and conceded removability, but he applied for asylum[4] and withholding of removal.[5]  As part of his request, Juarez-Espana claimed membership in two proposed Particular Social Groups (PSG): (1) Guatemalan male heir of Julian Juarez's agricultural family; and (2) Guatemalan heir to large plot of agricultural land.

In May 2019, about two months before Juarez-Espana's individual hearing on his claims, he requested a continuance to obtain additional documents from Guatemala to support his asylum application.  The IJ denied the motion.  According to the IJ, Juarez-

---

[3] A master hearing is a preliminary immigration hearing.  *See* U.S. Dep't of Just., Exec. Off. for Immigr. Rev., *Immigration Court Practice Manual*, § 4.15(e).  An individual hearing is the final hearing in an immigration case, where the IJ will decide to grant or deny the petitioner's application for relief.  *Id*. § 4.16.

[4] To establish asylum eligibility, an applicant "must, with specific and credible evidence, establish (1) past persecution on account of race, religion, nationality, *membership in a particular social group*, or political opinion; or (2) a well-founded fear of future persecution on account of a statutorily-protected ground."  *Hasan-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831, 843 (11th Cir. 2022) (emphasis added) (quotation marks omitted).

[5] Initially, Juarez-Espana also applied for Claim Against Torture (CAT) protection, but he did not appeal the BIA's determination as to that relief.

Espana failed to establish good cause because the immigration pro-
ceedings had been pending for several years, and Juarez-Espana did
not identify which documents were needed or their relevance. Ul-
timately, Juarez-Espana submitted available documents a week be-
fore his hearing.

At his July 2019 hearing, Juarez-Espana testified in support
of his applications and provided an overview of the family history
described above. Juarez-Espana explained that he feared returning
to Guatemala because he believed that Rosendo would kill him
also. Juarez-Espana was over the age of eighteen and was an heir
to the land once owned by Julian Juarez.[6] The IJ admitted the other
documents that Juarez-Espana submitted. Again, Juarez-Espana
asked for a continuance to obtain more documents, which the IJ
denied.

Although the IJ found Juarez-Espana "to be very credible,"
the IJ denied Juarez-Espana's applications and ordered him re-
moved. Specifically, the IJ explained that Juarez-Espana's testi-
mony could not meet his burden of proof—Juarez-Espana needed
additional documentation about what happened with the prosecu-
tion of Rosendo as it relates to the murders of Juan Pablo, Uber,
and Jhony. The IJ also issued an alternative holding that Juarez-

---

[6] Juarez-Espana testified that the local prosecutor filed charges against
Rosendo and others, corroborated with a 2009 Criminal Indictment. But Jua-
rez-Espana testified that Rosendo was released from custody, and Juarez-Es-
pana was unable to determine, by the date of his hearing, what happened with
the charges. Juarez-Espana testified that, because Rosendo had money and
influence, he could avoid the consequences.

Espana established no past persecution or fear of future persecution would be on account of protected grounds, i.e., his membership in a PSG.

### c.  Appeal to the BIA

Juarez-Espana timely appealed to the BIA.  The BIA dismissed his appeal, upholding the IJ's denial of a continuance to obtain additional documents.  The BIA affirmed the IJ's denial on the merits, as it relates to Juarez-Espana's membership in his PSG.  Juarez-Espana then timely appealed to our court.

## II.  Standard of Review and Applicable Law

We review the BIA's decision as the final agency decision and review the IJ's decision to the extent that the BIA expressly adopts or agrees with it.  *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam).

"We review the denial of a motion for continuance for an abuse of discretion." *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1285 (11th Cir. 2008) (per curiam).  In doing so, "[w]e ask whether the [BIA] exercised its discretion in an arbitrary or capricious manner." *Dos Santos v. U.S. Att'y Gen.*, 982 F.3d 1315, 1322–23 (11th Cir. 2020). For an agency like the BIA, we set aside its action as arbitrary and capricious only where it (1) "relied on factors which Congress has not intended it to consider," (2) "failed to consider an important aspect of the problem," (3) "explained its decision in a way that runs counter to the evidence," or (4) acted in a manner "so implausible that it[s] [action] could not be ascribed to a difference in view or the product of agency expertise."  *Mendoza v. Sec'y, Dep't of*

*Homeland Sec.*, 851 F.3d 1348, 1353 (11th Cir. 2017) (per curiam) (quotations omitted).

### III.    Analysis

We find that the BIA abused its discretion in affirming the IJ's denial of a continuance because the BIA failed to consider an important aspect of the problem. *See Mendoza*, 851 F.3d at 1353. First, the BIA failed to consider evidence of Juarez-Espana's diligence in preparing for his hearing, by working to acquire documents from Guatemala that then had to be translated. Second, the BIA inaccurately says that Juarez-Espana has not argued that he would have obtained evidence. In his motion to the IJ, Juarez-Espana's counsel said there were several documents that counsel was working to obtain from the Guatemalan government and that these documents would have to undergo time-consuming translation. Third, we find that the BIA failed to consider the IJ's erroneous statement that Juarez-Espana's proceedings had been pending since 2016. Although Juarez-Espana received his NTA in 2017, he did not appear at a master hearing until October 2018. At that master hearing, Juarez-Espana's counsel agreed to a July 2019 individual hearing date. But in May 2019, as Juarez-Espana's counsel motion for continuance indicates, he sought additional documents that would require significant time to translate. Juarez-Espana's counsel indicated he had already encountered this problem with other documents he managed to obtain.

For these reasons, we find that the BIA abused its discretion in upholding the IJ's denial of motion for continuance. We vacate

the decision of the BIA, and remand for the IJ to provide Juarez-Espana with additional time to provide supplemental evidence to support his asylum application.[7]

Although the Attorney General argues that we should affirm on other grounds, we believe the more prudent course is to remand for additional proceedings. We note that the IJ did not have the benefit of *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021), which vacated *Matter of A-B-*, 27 I. & N. Dec. 318 (A.G. 2018) (*A-B- I*) and *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) (*A-B- II*). There, the BIA addressed "the requirements that must be met to establish that an applicant has suffered persecution on account of membership in a particular social group [PSG]." 28 I. & N. Dec. at 308. "Portions of *A-B- I*"—upon which the IJ relied "have spawned confusion among the courts." *Id.* at 309. IJs and the BIA "should no longer follow *A-B- I* or *A-B- II* when adjudicating pending or future cases."

**PETITION GRANTED.**

---

[7] We make no determination about whether Juarez-Espana will succeed on the merits of his application.

22-14340          LUCK, J., Dissenting          1

LUCK, Circuit Judge, dissenting:

The immigration judge gave, and the Board of Immigration Appeals affirmed, two reasons why Kevin Juarez-Espana did not meet his burden to prove his asylum and withholding of removal claims. The *first reason* was that Juarez-Espana did not provide evidence to corroborate his otherwise credible testimony. *See Morales v. U.S. Att'y Gen.*, 33 F.4th 1303, 1308 (11th Cir. 2022) ("An applicant's failure to corroborate his testimony can be fatal to his asylum application." (citation omitted)). Juarez-Espana asked to continue his asylum hearing so he could obtain the corroborating evidence, but the immigration judge denied the motion because Juarez-Espana had not shown good cause for a continuance.

The *second reason* was that, even aside from the lack of corroboration, Juarez-Espana's asylum and withholding of removal claims failed "on the merits." Juarez-Espana did not show that Guatemala was unable or unwilling to protect him from persecution. *See Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010) ("An applicant for asylum who alleges persecution by a private actor must prove that his home country is unable or unwilling to protect him because the statutes governing asylum and withholding of removal protect against persecution by non-governmental groups that the government cannot control." (cleaned up)). He did not show that his particular social group—"Guatemalan heir to a large plot of agricultural land"—was socially distinct. *See Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1309 (11th Cir. 2019) ("Perez-Zenteno failed to present any evidence even suggesting that the

particular social group she had proffered was perceived as being socially distinct in Mexico." (citation omitted)).  And he did not show a nexus between his fear of future persecution and a particular social group.  *See id.* at 1312 ("Perez-Zenteno did not demonstrate a nexus between persecution and membership in the proffered group.").

The majority opinion grants Juarez-Espana's petition for review of the board's decision because it was an abuse of discretion to deny Juarez-Espana a continuance so he could obtain corroborating evidence.  But I don't see how denying the continuance was "arbitrary or capricious."  *See Dos Santos v. United States Att'y Gen.*, 982 F.3d 1315, 1323 (11th Cir. 2020).  First, Juarez-Espana had ample time to gather and provide corroborating evidence.  By the time of the asylum hearing, his immigration proceedings had been pending for nearly three years, and he had that entire time to find documents about his uncle's criminal case in Guatemala.  It was not arbitrary to deny Juarez-Espana more than the 1,056 days he was already afforded to corroborate his claims.  Second, there was nothing more for Juarez-Espana to present.  He couldn't find court records of his uncle's conviction because the place "where they kept the old archives . . . burned down."  And he couldn't find "a copy of the report finding [his uncle] not convict[ed]."  It was not capricious to deny him more time to find corroborating evidence that had been destroyed and, in almost three years, could not be found.  Third, Juarez-Espana failed to show that the denial of his continuance motion "caused him actual prejudice and harm and materially affected the outcome of his case."  *See Matter of Sibrun*, 18 I. & N.

Dec. 354, 356–57 (BIA 1983).  As the board found, Juarez-Espana did not "establish that the continuance, if granted, would have materially affected the outcome [o]f [the] case."  And he does not argue otherwise in his petition for review.

But even if the majority opinion is right that denying the continuance was an abuse of discretion, the continuance only relates to the *first reason* for denying Juarez-Espana's asylum and withholding of removal claims—the lack of corroboration.  Juarez-Espana's claims were denied for the *second reason* that they failed on the merits, even putting aside the lack of corroboration.

Yet the majority opinion does not address the *second*—merits-based—*reason* for denying Juarez-Espana's asylum and withholding of removal claims.  I would.  And I would deny his petition because substantial evidence supports the immigration judge and board's findings that:  the Guatemalan government was willing and able to protect Juarez-Espana from his uncle; his particular social group—"Guatemalan heir to a large plot of agricultural land"—was not socially distinct; and, even if he proffered a cognizable particular social group, there was no nexus between that group and the harm he says he would face.

The Guatemalan government was willing and able to protect Juarez-Espana, as evidenced by the fact that it investigated the death of his second cousin and arrested and prosecuted his uncle for murder.  Juarez-Espana's particular social group was not socially distinct because he offered no evidence that being an "heir" (as opposed to a landowner) is "perceived as a distinct group by

4                      LUCK, J., Dissenting                      22-14340

society." *See Amezcua-Preciado v. U.S. Att'y Gen.*, 943 F.3d 1337, 1342 (11th Cir. 2019). In fact, Juarez-Espana concedes that "[b]eing an heir is inherently speculative." A group cannot be perceived by "society as a whole" if no one knows who belongs to the group. *See id.* at 1342–43. And there was no nexus between Juarez-Espana's fear of future persecution and his particular social group because his relatives, who, like him, are also heirs to the family land, continue to live in Guatemala unharmed. *See Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1259 (11th Cir. 2006) ("Ruiz's claim was contradicted by his testimony that his son and his parents have remained unharmed in the region of Colombia where Ruiz allegedly was threatened."). The majority opinion does not grapple with this evidence.

For these reasons, I respectfully dissent.