**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-12965
Non-Argument Calendar
_____

ALBANA AVULLIJA,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
DIRECTOR, U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:23-cv-01185-HES-MCR
_____

Before ROSENBAUM, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Albana Avullija seeks review of the denial of the fifth alien relative petition filed on behalf of her husband, Leonard Avullija.[1] The United States Citizenship and Immigration Services denied the petition under 11 U.S.C. section 1154(c) because Leonard had previously sought to obtain United States citizenship through a sham marriage. Four previous petitions on Leonard's behalf met similar fates, including one that we reviewed. *See Avullija v. Sec'y of State*, 839 F. App'x 292, 299 (11th Cir. 2020). Albana filed suit to challenge the Services's denial as arbitrary and capricious under the Administrative Procedure Act. The district court dismissed the suit because she failed to state a claim that the Services's denial was arbitrary and capricious. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Albana and Leonard had their first child in April 2000 and married in June 2000. At the time, both were nationals and residents of Albania. They divorced in March 2001. One month later, Albana married her second husband, an American citizen, and, nine months after that, she became a lawful permanent resident. Another eight months later, Albana gave birth to her and Leonard's second child—while still married to her second husband. In May 2007, Albana became an American citizen. Within four months, she divorced her second husband—they had no children together.

---

[1] Since Albana and Leonard share a last name, we will refer to them by their first names.

Meanwhile, in March 2003, Leonard married his second wife, an American citizen named Alice Spivey. Leonard, however, did not share Albana's success in becoming an American citizen. In June 2011, Leonard divorced Spivey. Six months later, Leonard and Albana remarried.

All the while, beginning in 2003, five I–130 forms, which allow an American citizen to petition for the admission of an alien relative, were filed on Leonard's behalf. Spivey filed the first petition in March 2003, the same month she married Leonard, and the petition was initially approved in September 2004. But after Leonard applied for an immigrant visa:

> he attended an interview with authorities at the U.S. Consular Office in Tirana, Albania. The consular officer denied Leonard's 2006 visa application, saying there was "no evidence of a marital relationship" with [Spivey], whose marriage he found "was arranged for visa purposes only." Following denial of the visa, [a consular officer] revoked [Spivey]'s I–130. [Spivey] appealed the I–130 revocation to the Board of Immigration Appeals ("BIA"), which affirmed.

*Avullija*, 839 F. App'x at 293.

After Leonard and Spivey divorced, he and Albana remarried, and Albana filed the second petition. That petition was denied. As was the third. Albana's fourth petition was initially approved until Leonard met with consular officials once more to obtain a visa.

4                          Opinion of the Court                    24-12965

> The consular officer denied Leonard's . . . visa appli-
> cation, for two stated reasons.  First, the consular of-
> ficer cited 8 U.S.C. [section] 1182(a)(6)(C)(i), which
> renders inadmissible any noncitizen "who, by fraud
> or willfully misrepresenting a material fact, seeks to
> procure (or has sought to procure or has procured) a
> visa, other documentation, or admission into the
> United States."  Second, the consular officer cited 8
> U.S.C. [section] 1182(a)(4), which renders inadmissi-
> ble any noncitizen "who, in the opinion of the consu-
> lar officer at the time of application for a visa . . . , is
> likely at any time to become a public charge."  In or-
> der to overcome this bar, the noncitizen must include
> an affidavit of support from the sponsoring spouse
> showing the sponsor's domicile in the United States.
> Although Albana filed an affidavit of support for
> Leonard's visa application, "she proffered no evidence
> to show that she was domiciled in the United States,
> and the consular officer determined that she was not
> so domiciled."

*Id.* at 293–94 (citation modified).  We concluded that the district
court properly dismissed Albana's complaint because it failed to
state a claim.  *Id.* at 299.  The doctrine of consular nonreviewability,
we explained, governed the merits of Albana's claim, and under
that doctrine's "facially legitimate and bona fide" standard, the con-
sular officer's decision regarding both the visa fraud and public
charge issues passed muster.  *Id.*

Undeterred, in December 2021, Albana filed a fifth petition.
The petition contained much of the same evidence as was

presented in the previous petitions but added a sworn statement from Spivey in support of establishing the legitimacy of her marriage to Leonard. The Services found that Spivey's statement contradicted other evidence in the record that suggested Leonard's marriage to Spivey was a sham. The Services sent Albana a notice of intent to deny the petition, and, after reviewing her responses to the notice, denied the petition. As before, the Services found that the petition was barred by 8 U.S.C. section 1154(c) because Leonard had previously engaged in marriage fraud.

Albana sought review in the district court under the Administrative Procedure Act, claiming the denial was arbitrary and capricious. The district court granted the government's motion to dismiss because the denial of Albana's petition was not arbitrary or capricious, "and was a rational conclusion based on the evidence at hand."

Albana appeals the dismissal.

## STANDARD OF REVIEW

"We review de novo a dismissal for failure to state a claim, applying the same standard used by the district court." *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc).

## DISCUSSION

"The Administrative Procedure Act provides that a person adversely affected by final agency action is entitled to judicial review." *Bouarfa v. Sec'y, Dep't of Homeland Sec.*, 75 F.4th 1157, 1161

(11th Cir. 2023) (citing 5 U.S.C. §§ 702, 704), *aff'd sub nom. Bouarfa v. Mayorkas*, 604 U.S. 6 (2024). "Under the [Act], an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial evidence.'" *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (11th Cir. 2017) (citing 5 U.S.C. § 706(2)(A), (E)). Under this "narrow form of review," we will set aside agency action as arbitrary and capricious when the agency (1) "has relied on factors which Congress has not intended it to consider," (2) entirely failed to consider an important aspect of the problem, (3) "offered an explanation for its decision that runs counter to the evidence before the agency," or (4) offered an explanation "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1254 (11th Cir. 2007).

The Services's explanation for its decision was based on 11 U.S.C. section 1154(c). Section 1154(c), which is titled, in part, "prohibition against approval in cases of marriages entered into in order to evade immigration laws," provides that "no petition shall be approved" where "the alien has attempted to or conspired to enter into a marriage for the purpose of evading the immigration laws."[2] 11 U.S.C. § 1154(c). "[T]he [Services] 'will deny' an I–130

---

[2] The Act does not permit our review of matters committed to agency discretion. *See Bouarfa*, 75 F.4th at 1161. But we may review "a claim that the Secretary [of Homeland Security] erred when he made a non-discretionary determination that is a statutory predicate to his exercise of discretion." *Id.* at 1163. Here, section 1154(c) is "a non-discretionary determination that is a statutory

petition where there is 'substantial and probative evidence' of an attempt or conspiracy to enter into a fraudulent marriage." *Mendoza*, 851 F.3d at 1354 (quoting 8 C.F.R. § 204.2(a)(1)(ii)). To determine whether a previous marriage was fraudulent, "the relevant inquiry is whether the 'bride and groom intended to establish a life together at the time they were married.'" *Id.* (quoting *Matter of Laureano*, 19 I. & N. Dec. 1, 2–3 (BIA 1983)). The Services may rely on any relevant evidence to make this determination, "including evidence derived from previous . . . proceedings." *Id.* (citing *Matter of Tawfik*, 20 I. & N. Dec. 166, 168 (BIA 1990)).

Albana argues that the Services's determination that Leonard's marriage to Spivey was a sham was arbitrary and capricious. But the evidence supports the Services's determination. Leonard and Spivey did not speak the same language. Spivey was previously married to Leonard's cousin. Spivey left Albania, where Leonard lived, one week after the marriage, and did not return or see Leonard for years afterwards. The pair never lived together. They married shortly after the birth of Leonard's second child with Albana, while she was married to another man. And the pictures that purported to document their relationship appeared staged and taken on a single day. While Albana fights the inferences the Services drew from the evidence, the Act does not allow us to "reweigh the evidence from scratch." *See Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1194 (11th Cir. 2021) (citation modified).

---

predicate to [the Services's] exercise of discretion," which we may review. *See id.*

Even so, Albana responds, the Services's sham-marriage determination did not account for Spivey's new affidavit. But the Services did consider the affidavit and discounted it because it contradicted the record evidence about: (1) when Spivey first spoke with Leonard; (2) when she submitted the first I–130 petition; (3) the number of people at her wedding ceremony; and (4) whether Leonard's parents attended or knew about the wedding. "Affidavits of this nature, alone, will generally not be sufficient to overcome evidence of marriage fraud in the record without objective documentary evidence to corroborate the assertions made by the affiants." *Matter of Pak*, 28 I. & N. Dec. 113, 119 (BIA 2020) (citation modified). Here, the affidavit was not sufficient because the evidence contradicted rather than corroborated Spivey's assertions.

Finally, Albana contends that the district court erred in dismissing her complaint without reviewing the complete administrative record. But Albana conceded that the evidence used to support the fifth petition was "similar (if not the same) as the evidence submitted" with the earlier petitions. And the only new evidence—the new Spivey affidavit—was attached to Albana's response to the motion to dismiss for the district court to consider. So, the district court had everything it needed to conclude that Albana failed to state a claim under the Act because the Services's decision denying the fifth petition was not arbitrary and capricious. So do we.

**AFFIRMED**.