[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 20-14054

_____

SERGIO ELIAS LOPEZ MORALES,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A216-388-306

_____

Before WILSON, ROSENBAUM, Circuit Judges, and COVINGTON,* District Judge.

WILSON, Circuit Judge:

Petitioner Sergio Lopez Morales, a Guatemalan national of indigenous Mayan heritage, seeks review of the Board of Immigration Appeals' (BIA) final order affirming the Immigration Judge's (IJ) denial of his application for asylum on account of racial persecution. Morales had applied for asylum under the Immigration and Nationality Act (INA) § 208(b)(1), 8 U.S.C. § 1158(b)(1), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture (CAT), 8 C.F.R. § 208.16(c). On appeal, Morales argues that (1) the BIA failed to provide reasoned consideration on his request for asylum relief based on racial persecution (instead lumping his racial persecution claims with his claims based on his proposed social group), having adopted in large part the IJ's determination making the same mistake, and (2) the IJ should have permitted him advance notice of the need for specific corroborating evidence to meet his burden of proof and an automatic continuance to provide that evidence after determining that his testimony was credible because 8 U.S.C. § 1158(b)(1)(B)(ii) (2012) requires it. We deny Morales's petition as to the first issue and dismiss Morales's petition as to the second issue.

---

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

I.

Morales is a Guatemalan citizen who is ethnically and culturally Mam—an indigenous Mayan ethic group. When he applied for admission to the United States, Morales was seventeen years old and unaccompanied by his parents.

Morales left school at twelve, citing discriminatory bullying from his classmates and teachers. Subsequently, Morales looked for work, being repeatedly discriminated against before ultimately finding work at a farm near his home. Morales spent one year at the farm, owned by a man named Andres who repeatedly subjected him to verbal and physical abuse. Following one incident in which Morales collapsed and was beaten by Andres as a result, Morales decided to leave his job. However, Andres appeared at his home that evening, forced him to return, and confined him in a storage shed overnight as punishment. After releasing Morales from the shed the next day, Andres told Morales that if he tried to leave again, he would make him disappear and "[he] would only be another disappeared indigenous." Morales reported the abuse to community leaders and police to no avail. Morales continued to work for Andres briefly until he could escape to the United States.

Morales applied for admission to the United States on November 21, 2017, at the San Luis, Arizona Port of Entry. Pending the outcome of his removal proceedings, he was released on December 24, 2017, into the custody of his brother who lives in the United States. Morales applied for asylum and for withholding of

removal based on race, membership in a particular social group, and the torture convention.

In his hearing before the IJ, Morales testified he is an indigenous Mayan and speaks Mam. He also testified that, because he believed that job discrimination would follow him throughout Guatemala and his former employer would not stop looking for him until he found and killed him, he and his mother decided he should relocate to the United States, rather than internally. On cross-examination, he explained that his mother had not submitted an affidavit because she only spoke and wrote in Mam. He did not know why he had not asked his siblings, two of which lived in the United States, to write affidavits for him. He clarified that he reported his former employer to community leaders and the police, but no written police report existed, and the police dismissed his complaint as "normal."

The IJ denied Morales's claims for asylum, withholding of removal, and CAT relief. As relevant here, the IJ determined that Morales had failed to establish his burden of demonstrating a well-founded fear of future persecution on account of a protected ground or any nexus to a basis for a finding of past persecution, for the purposes of asylum relief. The IJ labeled the conduct of Morales's previous employer as merely a criminal act by a private actor. The IJ found Morales to be credible but that his testimony was "mostly conclusory and speculative and . . . lack[ed] any corroborating evidence that is required by the REAL ID Act of 2008 [sic]"

from any family, police, or local leaders.[1] The IJ further stated that his proposed social group of "Young Guatemalan and Mayan descendants who may be subject to discrimination, forced labor, and physical abuse" upon which he sought relief was overly broad, noting that a particular social group must exist independent of the harm. The IJ continued to find that internal relocation may be a reasonable alternative.

Morales appealed to the BIA. In his brief, he argued that the IJ erred in denying his claims because the IJ failed to find a nexus between his persecution and his race and rejected his particular social group as overly broad. Morales noted that, in reaching a decision, the IJ had relied on the REAL ID Act of 2005[2], which placed the burden on the respondent to not only testify credibly but also to provide corroborating documentary evidence; but in any event, he argued that he had met this burden through credible testimony and supporting documents. Lastly, Morales argued that the IJ erred in finding that internal relocation was a reasonable alternative because he was persecuted on account of his race which was demonstrated to be ubiquitous in Guatemala.

---

[1] The act to which the IJ referred is actually the REAL ID Act of 2005, which amended 8 U.S.C. 1158(b)(1)(B), the provision regarding the applicant's burden of proof for demonstrating his or her eligibility for asylum and withholding of removal. *See* Pub.L. No. 109–13, 119 Stat. 302, § 101(h)(2).

[2] Although Morales repeated the IJ's error in referring to the Act as "the REAL ID Act of 2008," we substitute here the proper name of the act to which Morales intended to refer.

On October 6, 2020, the BIA dismissed Morales's appeal. It acknowledged that he sought relief on account of his Mayan race and membership in a particular social group of young Guatemalan and Mayan descendants subject to discrimination, forced labor, and physical abuse and that the IJ found him credible. However, the BIA rejected Morales's particular social group as "impermissibly circular," and therefore, not cognizable. Specifically, it noted that the social group was defined by the claimed persecution, namely the harm he endured both in school and in seeking employment. It added that the additional characteristic of his race "d[id] not cure this fatal flaw." The BIA also upheld the IJ's finding that because Morales failed to satisfactorily corroborate the specific facts of his case, he failed to meet his burden of proof even though the IJ determined that his testimony was credible. It emphasized that his explanations concerning the absence of affidavits from his mother and siblings was insufficient to explain the lack of reasonably available corroborating evidence, noting that his mother was literate in Mam and he had offered no further explanations on appeal. He then timely filed this appeal.

## II.

We review de novo our own jurisdiction. *Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 799 (11th Cir. 2016). We review the BIA's conclusions of law de novo and its factual findings under the "substantial evidence test." *Lopez v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019). Claims that the BIA failed to give reasoned

consideration to an issue or claims of legal error are questions of law. *Jeune*, 810 F.3d at 799.

                                    III.

        First, we are "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect to those claims. *See* INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *see also Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250–51 (11th Cir. 2006) (per curiam) (holding that the exhaustion requirement was not satisfied, even after the BIA's sua sponte exhaustion of the issue, where petitioner failed to challenge the determination in both his notice of appeal and brief before the BIA). Before we may review Morales's appeal on the merits, we must be satisfied that his claims are exhausted, which is necessary for this court to have jurisdiction over his claims.

        Section 1252(d)(1)[3] provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." The very aim of the exhaustion doctrine is "that the petitioner provide[s] information sufficient to enable the BIA to review and correct any errors

_____

[3] 8 U.S.C. § 1252(d)(1).

below." *Jeune*, 810 F.3d at 800 (internal quotation marks omitted). Unadorned conclusory statements and passing references to an issue do not satisfy the exhaustion requirement. *Id.* Instead, the petitioner must raise both the core issue and set out any discrete arguments he relies on in support of that claim before the BIA. *Id.*; *see, e.g.*, *Shkambi v. U.S. Att'y Gen.*, 584 F.3d 1041, 1048 n.4 (11th Cir. 2009) (per curiam) (dismissing as unexhausted petitioner's specific argument that the IJ had engaged in speculation when discrediting his testimony, where the petitioner had contested only the broader adverse-credibility finding before the BIA).

Although the parties only brief exhaustion with respect to Morales's reasoned consideration claim, we raise sua sponte the additional issue of whether Morales exhausted his second claim about whether he was entitled to advance notice of the IJ's need for specific corroborating evidence. We provide analysis to each issue in turn.

A.

The first issue that Morales raises on appeal is that the BIA failed to provide reasoned consideration to his claim seeking asylum based on racial persecution, as distinct from his claim seeking the same based on his proposed social group. The government contends that Morales failed to exhaust this claim below. We find, however, that this claim has been sufficiently exhausted.

Morales's BIA brief focuses on rebutting the IJ's conclusion that Morales had not demonstrated the nexus between his

persecution and his membership in his particular social group. Instead, he argued that the IJ erred because he was entitled to asylum "on account of race and membership in a particular social group." In ruling on Morales's appeal, the BIA noted that his proposed social group was not cognizable because it was "impermissibly circular," adding that the additional characteristic of race that he added "does not cure this fatal flaw." The BIA's reasoning here makes it clear that it understood Morales to be arguing race as a distinct basis for relief and was thus able to review the IJ's decision for error—this is all that the exhaustion doctrine requires. *Jeune*, 801 F.3d at 800.

In its decision, the BIA relied on its own reasoning to deny Morales's racial persecution claims and did not expressly adopt the IJ's findings. Therefore, we review the BIA's decision as the final judgment. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam). And it is in fact the BIA's alleged lack of reasoned consideration on his racial persecution claim that Morales appeals here. We thus maintain jurisdiction to review Morales's argument that the BIA failed to give reasoned consideration because a petitioner logically cannot raise such an argument before the BIA has decided. *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1299 (11th Cir. 2015).

### B.

Because it is possible that we lack subject-matter jurisdiction over Morales's second claim, we must sua sponte review whether we have jurisdiction over it. *Chacon-Botero*, 427 F.3d at 956. The

question here is whether Morales has exhausted his claim about whether 8 U.S.C. § 1158(b)(1)(B)(ii) requires the IJ to identify the specific evidence necessary to meet the applicant's burden of proof and to provide an automatic continuance for the applicant to obtain that evidence. Upon our review, we find that he has not and thus we lack jurisdiction.

The asylum applicant must establish eligibility for asylum by offering "credible, direct, and specific evidence in the record." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (internal quotation marks omitted). An applicant's testimony, if credible, may be found alone sufficient to meet his burden for asylum. 8 U.S.C. § 1158(b)(1)(B)(ii). However, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." *Id.* An applicant's failure to corroborate his testimony can be fatal to his asylum application. *Forgue*, 401 F.3d at 1287; *see also Matter of J-Y-C-*, 24 I. & N. Dec. 260, 263 (BIA 2007) (noting that corroborating evidence is particularly important to support material facts central to an applicant's claim, and the absence of such corroborating evidence can lead to a finding that an applicant has failed to meet his burden). "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005).

An examination of Morales's BIA brief makes clear that he did not raise his corroborating evidence claim at any point before the BIA. Although the exhaustion doctrine is intended to ensure "that the petitioner provide[s] information sufficient to enable the BIA to review and correct any errors below," *Jeune*, 810 F.3d at 800 (internal quotation marks omitted), Morales clearly did not do so. This is partially evidenced by the BIA not addressing the issue at all. His sole reference to corroborating evidence in his BIA brief is his statement, without further argument, that the IJ relied on the REAL ID Act of 2008, which placed the burden on the respondent to not only testify credibly but also to provide corroborating documentary evidence. But Morales did not address the implications of the IJ relying on the REAL ID Act of 2005, not even to argue that the IJ erred in doing so. But even if Morales had adequately raised the issue, the exhaustion doctrine requires something more. Morales must not just merely raise the issue; he must argue it. *Shkambi*, 584 F.3d at 1048 n.4. And because he did not do that before the BIA, he has not exhausted the second claim.

It is important to note that § 1252(d)(1) provides that exhaustion applies only to those remedies "available to the alien as of right." As such, we have indicated that the exhaustion doctrine may not apply to claims which the agency lacks the power to adjudicate. *See, e.g., Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 868 (11th Cir. 2018) (holding that the plaintiff was required to exhaust his claims before raising them before our court because "[e]ach of his claims could have been addressed by the BIA" and "none . . .

raise[d] a larger challenge to the immigration process beyond the power of the BIA to address"). In *Booth v. Churner*, when deciding the meaning of "administrative remedies . . . available," the Supreme Court acknowledged that an exhaustion requirement would necessitate at least that "the administrative process has authority to take some action in response to a complaint." 532 U.S. 731, 736 (2001). After all, "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the [complainant] with nothing to exhaust." *Id.* at 736 n.4.

But there is no indication that the BIA lacks the power to adjudicate Morales's claim. In fact, the BIA has held on-point that all that 8 U.S.C. § 1158(b)(1)(B)(ii) entitles an applicant to, after the IJ finds that certain evidence should have been submitted, is an opportunity to explain why he could not reasonably obtain the evidence. *Matter of L-A-C-*, 26 I. & N. Dec. 516, 522 (BIA 2015). That the BIA issued a decision directly adverse to Morales's preferred reading of the provision demonstrates the BIA's power to adjudicate such claims.

Although some other courts have accepted the argument that a remedy is not "available to the alien as of right" where the BIA's precedent precludes relief for an applicant's substantive claim, *see, e.g.*, *Sun v. Ashcroft*, 370 F.3d 932, 941–42 (9th Cir. 2004), we have explicitly rejected this notion. In *Sundar v. INS*, 328 F.3d 1320, 1325 (11th Cir. 2003), we found that the applicant "may not bypass the BIA simply because he thinks it will be

20-14054              Opinion of the Court                 13

unsympathetic to his claim," but "the BIA could have accepted [his] interpretation and reversed its [prior] decision . . . . " So, because the applicant did not appeal the IJ's decision to the BIA on those grounds, we found that he thus "deprived [the BIA] of the opportunity to discover and correct its own error." *Id.* (internal quotation marks omitted) (alterations adopted).

We have held before that, when we are dealing with § 1252(d)(1)'s exhaustion requirement, "we are dealing with a statutory exhaustion requirement, and we will not read futility or other exceptions into [them] where Congress has provided otherwise." *Id.* at 1326 (internal quotation marks omitted). And we have held § 1252(d)(1)'s statutory exhaustion requirement to be jurisdictional, thus "we lack jurisdiction to consider claims that have not been raised before the BIA." *Id.* at 1323.

In sum, because Morales had the opportunity to exhaust his claim before the BIA but did not, we lack jurisdiction to address his claim on the merits.[4]

---

[4] But we note that the substance of Morales's claim remains an open question in the Eleventh Circuit upon which other circuits split. *Compare Ren v. Holder*, 648 F.3d 1079, 1091–92 (9th Cir. 2011) (holding that the plain language of the statute shows that the applicant was entitled to notice and an opportunity to corroborate), *and Saravia v. U.S. Att'y Gen.*, 905 F.3d 729, 737–38 (3d Cir. 2018) (finding that applicant was so entitled because, logically, "we cannot have meaningful judicial review without giving the applicant notice and opportunity to corroborate"), *with Rapheal v. Mukasey,* 533 F.3d 521, 530 (7th Cir. 2008) (finding that applicant was not entitled under the statute because to find otherwise "would add to the already overburdened resources of the DHS,

IV.

Because Morales adequately exhausted his reasoned-consideration claim, we review the claim on the merits. The BIA relied on its own reasoning to deny the claim; therefore, we review the BIA's decision as the final judgment. *Gonzalez*, 820 F.3d at 403. In a reasoned-consideration analysis, we ask whether the BIA "consider[ed] the issues raised and announce[ed] [sic] its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Jeune*, 801 F.3d at 803 (internal quotation marks omitted). We do not require that the BIA specifically address each of the applicant's claims. *Shkambi*, 584 F.3d at 1048. "Ultimately, [the BIA] does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Jeune*, 810 F.3d at 803.

Morales's argument proceeds as follows. Morales stated clearly both before the IJ and the BIA that he seeks asylum relief

---

and such an approach would seem imprudent where the law clearly notifies aliens of the importance of corroborative evidence."), *and Wei Sun v. Sessions,* 883 F.3d 23, 29–30 (2d Cir. 2018) (finding that the applicant was not so entitled because the BIA's contrary construction of the statute in *Matter of L-A-C-* was owed deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), given that the court found the statute to be ambiguous and the BIA's interpretation to be reasonable).

based on persecution due to his race and his social group, given that he is a "[y]oung Guatemalan and Mayan descendant[] who may be subject to discrimination, forced labor, and physical abuse." However, so his argument goes, the BIA recognized his claim only insofar as he invoked his social group as a basis for asylum—it rejected the social group as "impermissibly circular" in its decision. But Morales argues that his race is an independent basis for his application and that the BIA repeatedly acknowledged that he seeks asylum also for racial persecution yet it failed to reach a decision on that ground. Further, on Morales's view, these facts show that the IJ did not "misstate[] the contents of the record" but rather entirely forgot to treat his race claim as distinct from his social group claim. *Jeune*, 810 F.3d at 803. Then, he maintains, the BIA, guided by the IJ's error, compounded the issue. Thus, Morales asserts that the BIA's failure to determine whether he was entitled to asylum on account of his race overlooked an entire facet of his claim, which is a lack of reasoned consideration warranting remand. *Tan v. U.S. Atty. Gen.*, 446 F.3d 1369, 1375–76 (11th Cir. 2006). In effect, Morales argues that the BIA erroneously condensed its analysis and considered only the social group claim when he also made a distinct racial claim.

We find that the BIA provided reasoned consideration to Morales's asylum claim based on racial persecution when it agreed with and expanded on the IJ's findings. This is true for two reasons.

First, a review of the decision shows that the BIA did not misstate the contents of the record, fail to adequately explain its

rejection of logical conclusions, or provide an unreasonable justification for its decision, which, when present, would tend to suggest a failure to provide reasoned consideration. *Jeune,* 810 F.3d at 803. And Morales does not even argue that the BIA here demonstrated any of those factors but insisted that the BIA "forgot" to make a separate ruling on his racial discrimination claim. But the BIA did not forget the racial persecution claim because although brief, the BIA clearly acknowledged and adjudicated the claim.

Second, the BIA, in upholding and discussing the IJ's findings, addressed Morales's claim to the extent argued, though it was not even required to address it specifically. *Shkambi*, 584 F.3d at 1048. After all, the BIA specifically found that the "addition of the characteristic of the respondent's race does not cure" the "impermissibl[e] circular[ity]" of Morales's proposed social group. Because Morales did not distinguish his arguments about his race and social group, the BIA addressed Morales's claim to the extent it could in stating that his race could not cure the impermissible circularity of his proposed social group. Although Morales argues that the decision concerning his racial group as a basis for asylum is "something we cannot tell was decided . . . [and thus] this must be re-decided by the IJ," we find that this decision was sufficient to show that the BIA considered this claim and did so in a way allowing for effective review. *Jeune*, 801 F.3d at 803.

Observing no indication that the BIA failed to provide reasoned consideration or make adequate findings, we find that the

BIA gave reasoned consideration to Morales's racial persecution claim.

V.

Because our review of the BIA's decision makes clear that it provided reasoned consideration to Morales's racial persecution claim for asylum, we deny the petition for review as to Morales's first claim. We dismiss the rest of the petition because Morales failed to exhaust his second claim that he was entitled under 8 U.S.C. § 1158(b)(1)(B)(ii) to advance notice of the need for specific corroborating evidence to meet his burden of proof and an automatic continuance to provide that evidence.

**DENIED IN PART and DISMISSED IN PART.**