[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-10722

Non-Argument Calendar

————————————————

WILMAR BURGOS GONZALEZ,
JERONIMO BURGOS BALLESTEROS,
JUAN J. BURGOS BALLESTEROS,
MONICA R. BALLESTEROS CLAROS,

                                                        Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                        Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A202-175-189

_____

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Wilmar Burgos Gonzalez, the lead petitioner,[1] and his wife and two sons seek review of the Board of Immigration Appeals' final order affirming the immigration judge's denial of his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment. We partly grant and partly dismiss Burgos Gonzalez's petition.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Burgos Gonzalez and his family, natives and citizens of Colombia, entered the United States without inspection in October 2014. Because they lacked valid entry documents, the Department of Homeland Security charged them with inadmissibility and served them with notices to appear before the immigration judge.

In February 2017, Burgos Gonzalez applied for asylum, withholding of removal, and relief under the Convention Against

---

[1] Because Burgos Gonzalez's wife and two sons are derivative beneficiaries on his asylum claim and do not assert their own claims for relief from removal, this opinion primarily addresses Burgos Gonzalez and his claims.

Torture, claiming he was persecuted on account of his political opinion and membership in a particular social group. In his application, Burgos Gonzalez stated that he feared kidnapping and torture by the Revolutionary Armed Forces of Colombia, known as FARC, a Marxist–Leninist guerilla organization that had been active in Colombia since 1964.

Burgos Gonzalez explained that, as an attorney, he'd advised a group of Colombian businessmen to form an association to collectively petition the authorities for protection against extortion by FARC. He participated in three meetings of the association between December 2009 and January 2010. Then, Burgos Gonzalez began receiving anonymous calls demanding that he pay extortion and threatening to kill him and his family if he didn't. In June 2010, upon leaving his home by car, he noticed two individuals on a motorcycle following him. He said the motorcycle passenger pointed a firearm in Burgos Gonzalez's direction, and Burgos Gonzalez accelerated through traffic. The two men fled when he arrived at a nearby police station. For the next two weeks, the threatening phone calls continued; the callers identified themselves as FARC members and told Burgos Gonzalez in one call that he'd been lucky the motorcyclists hadn't killed him.

Because of the threats and the motorcycle incident, Burgos Gonzalez moved twice, changed his cell phone number, and sought protection from local police and the national attorney general's office. The authorities initially told him to wait and see if the callers identified themselves. Later, the attorney general's office

opened an investigation, but Burgos Gonzalez opted to leave the country.  He came to the United States with his family after unsuccessfully seeking asylum in Canada.

The immigration judge conducted a merits hearing on Burgos Gonzalez's application in February 2019.  Burgos Gonzalez confirmed the facts in the application and introduced numerous documents and affidavits to support his claims.  Burgos Gonzalez told the immigration judge that he believed the motorcycle incident was an attempt on his life because the actions of the two motorcyclists were consistent with a common tactic used for committing homicides in Colombia.  When the immigration judge noted that the motorcycle passenger didn't fire his weapon at Burgos Gonzalez, Burgos Gonzalez testified that the man had been prevented from doing so only because Burgos Gonzalez escaped to the police station by accelerating through traffic.

The immigration judge denied Burgos Gonzalez's application for asylum, withholding of removal, and relief under the Convention Against Torture.  The immigration judge found that Burgos Gonzalez was a credible witness and accepted the legal sufficiency of his proposed particular social group—namely, "professionals in Colombia, specifically lawyers and businessmen, who refused to cooperate with . . . FARC."  But the immigration judge found that Burgos Gonzalez's actions to help the extorted businessmen didn't constitute expression of an actual or imputed political opinion and that—even accepting all of his testimony as true—the facts were insufficient to establish that he experienced past

persecution. The immigration judge observed that, "other than a series of threatening phone calls and one incident involving an armed individual on a motorcycle who did not fire on [Burgos Gonzalez's] car," no evidence showed that he or his family had been physically harmed or suffered other mistreatment that rose to the level necessary to show past persecution.

Regarding a well-founded fear of future persecution, the immigration judge found that Burgos Gonzalez's fear of returning to Colombia was subjectively genuine. But the immigration judge said he was unable to find that Burgos Gonzalez had an objectively genuine fear of return because he had been outside the country for nine years and his family members in Colombia remained unharmed.

The immigration judge noted that extortion victims bear the burden of showing that the extortion was motivated by reasons beyond criminality. Finding no clear evidence that Burgos Gonzalez would be targeted upon returning to Colombia for reasons other than FARC not receiving the demanded extortion money, the immigration judge reasoned that "it would seem by extension that [Burgos Gonzalez would be] unable to satisfy the burden of showing that any targeting would be beyond that of a criminal nature." The immigration judge also found no clear evidence that Burgos Gonzalez was unable to relocate within Colombia. Consequently, the immigration judge concluded that Burgos Gonzalez failed to meet the burden for establishing eligibility for asylum or the higher burden to qualify for withholding of removal.

Regarding relief under the Convention Against Torture, the immigration judge found no evidence establishing that Burgos Gonzalez would (more likely than not) be subject to torture by or with the consent or acquiescence of government officials or individuals acting in an official capacity. He noted that Burgos Gonzalez had succeeded in convincing the authorities to issue reports and act in some capacity to protect members of the business association.

Burgos Gonzalez appealed to the board. He asserted that he'd suffered past persecution, and had an objectively reasonable fear of future persecution, based on the death threats and the motorcycle incident, arguing that attempted murder was sufficient evidence of past persecution even without physical injury. He also argued that the immigration judge erred in concluding that he failed to relocate and that FARC's nationwide operation precluded the possibility of relocation. Burgos Gonzalez raised no argument concerning the immigration judge's findings on the Convention Against Torture. The board adopted and affirmed the immigration judge's decision.

## STANDARD OF REVIEW

We review only the decision of the board, except to the extent that the board expressly adopted the immigration judge's decision. *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 956 (11th Cir. 2005). Where the board adopted the immigration judge's decision, we review the immigration judge's decision as well as the board's. *Id.* We review factual determinations under the

substantial evidence test, *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009), which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision," *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).  We "must affirm the [board's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation omitted).  The mere fact that the record may support a different conclusion is insufficient to justify a reversal of administrative findings. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007).  Rather, the record must compel a contrary conclusion to warrant reversal. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1006 (11th Cir. 2008).

## DISCUSSION

As to his asylum and withholding of removal claims, Burgos Gonzalez argues that the immigration judge and the board erred in finding that:  (1) he had not met his burden to show past persecution; (2) he had not met his burden to show a well-founded fear of future persecution; and (3) he had not met his burden to show he could reasonably relocate within Colombia.  Burgos Gonzalez also challenges the finding that he failed to show he's eligible for relief under the Convention Against Torture.

### A.  Asylum

The government has discretion to grant asylum to an otherwise removable alien.  8 U.S.C. § 1158(b); *Mazariegos v. U.S. Att'y*

*Gen.*, 241 F.3d 1320, 1323–24 (11th Cir. 2001).  But that discretion can be exercised only if the alien qualifies as a refugee, *Mazariegos*, 241 F.3d at 1324, which is defined as a person "who is unable or unwilling to return to, and is unable or unwilling to avail . . . himself of the protection of," his home country due to "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A).

The applicant bears the burden of proving eligibility for asylum.  *Id.* § 1158(b).  A showing of past persecution creates a presumption of a well-founded fear of future persecution, subject to rebuttal by the department.  *Sanchez Jimenez*, 492 F.3d at 1232.  To overcome this presumption, the department bears the burden to show by a preponderance of the evidence either that conditions in the country have changed, such that the applicant no longer has a well-founded fear of future persecution notwithstanding the past persecution, or that the applicant could avoid future persecution by relocating within the country if, under all the circumstances, it would be reasonable to expect the applicant to do so.  *Id.*

An applicant who fails to establish past persecution can still prove eligibility for asylum by showing (1) a subjectively genuine and objectively reasonable fear of future persecution that is (2) on account of a protected ground.  8 C.F.R. § 208.13(b)(2)(i); *De Santamaria*, 525 F.3d at 1316.  The applicant can satisfy the subjective component by providing credible testimony that he genuinely fears persecution.  *De Santamaria*, 525 F.3d at 1316.  And he can satisfy

the objective prong by providing evidence establishing that he has a good reason to fear future persecution. *Id.*

Although the statute doesn't define persecution, we've said that it "is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and . . . mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (cleaned up). "[O]nly in a rare case does the record compel the conclusion that an applicant for asylum suffered past persecution or has a well-founded fear of future persecution." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1239 (11th Cir. 2006).

This is one of the rare cases where the record compels a conclusion that Burgos Gonzalez suffered past persecution. The only evidence available to the immigration judge and the board was from Burgos Gonzalez, and that evidence was found to be credible and corroborated. That same undisputed, credible, and corroborated evidence showed that FARC members tried to murder Burgos Gonzalez.

First, a family friend of Burgos Gonzalez, William Aguirre Cifuentes, averred that he overheard a cassette recording in which Burgos Gonzalez was threatened with a bomb. After Burgos Gonzalez left Colombia, Cifuentes went to get his friend's mail. As Cifuentes was leaving, two armed men approached him, said they were members of FARC, asked where Burgos Gonzalez was, and told Cifuentes to tell Burgos Gonzalez that he would be killed when he returned to the country.

Second, one of Burgos Gonzalez's coworkers, Javier Torres Garcia, swore that a man called at work asking for Burgos Gonzalez. The man on the phone asked for 250 million pesos and threatened to kill Burgos Gonzalez if he didn't pay. After Burgos Gonzalez left Colombia, armed men came looking for him. The men threatened to kill Burgos Gonzalez if they saw him again.

Third, Burgos Gonzalez testified that, starting in February 2010, he received anonymous calls at his home and work demanding that he pay 200 million pesos or he would be killed. Then, in June, as Burgos Gonzalez was on his way to work, he was followed by two people on a motorcycle. The passenger had a weapon and pointed it at Burgos Gonzalez. Burgos Gonzalez sped away and drove straight to the police station. Soon after, callers identifying themselves as FARC members called Burgos Gonzalez at work and said he was "lucky [to have] survived the motorcycle incident." Burgos Gonzalez testified that murders in Colombia were normally committed by people on a motorcycle with the person in the back acting as the shooter.

So, the immigration judge and the board had undisputed, credible, and corroborated testimony that: Burgos Gonzalez was threatened with murder if he didn't pay money; a motorcycle rider pulled a gun and pointed it at Burgos Gonzalez, but he got away by speeding up and driving to a police station; this was how murders were normally committed in Colombia; FARC members took responsibility for the motorcycle incident; and, after Burgos Gonzalez left Colombia, FARC members threatened to kill him when

he returned. The only conclusion compelled by these undisputed facts was that FARC members tried to kill Burgos Gonzalez in June 2010. This means that Burgos Gonzalez suffered past persecution. "Put simply, attempted murder is persecution." *Sanchez Jimenez*, 492 F.3d at 1233.

Having established past persecution, Burgos Gonzalez was entitled to a rebuttable presumption that he had a well-founded fear of future persecution. *See id.* at 1232. But because the immigration judge and the board found that Burgos Gonzalez *hadn't* established past persecution, they neither gave Burgos Gonzalez the benefit of this presumption, nor held the department to its corresponding burden of rebutting it. We grant Burgos Gonzalez's petition for the board to apply the presumption and to determine whether the department overcame it with record evidence.[2] *See id.*

---

[2] The immigration judge and the board found that Burgos Gonzalez didn't show that his fear of returning to Colombia was "objectively genuine" and "there was insufficient evidence to establish why [he] would not be able to relocate elsewhere in the country." But these findings are not enough to overcome the presumption. Once the presumption applies, it wasn't Burgos Gonzalez's burden to show that his fear of return was well-founded or that he could avoid persecution by reasonably relocating to another part of Colombia. Rather, when the presumption applies, *the department* has the burden to overcome the presumption by showing that conditions in Colombia have changed such that Burgos Gonzalez's fear of return is no longer reasonable or that he could avoid future persecution by relocating within the country if it would be reasonable to do so. *See Sanchez Jimenez*, 492 F.3d at 1232. But the immigration judge and the board didn't make either of these findings.

### B. Withholding of Removal

Because the immigration judge and the board determined that Burgos Gonzalez was ineligible for withholding of removal only because he was ineligible for asylum, granting his petition as to his asylum claim also requires that we grant his petition as to his withholding of removal claim. *See id.* at 1239 (explaining that because "the [immigration judge] denied [the] application for withholding of removal based upon his conclusion that [the applicant] would not have established the less stringent standard for asylum," our decision vacating the denial of the asylum claim also required vacating the denial of the withholding of removal claim).

### C. Convention Against Torture

We're "obligated to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." *Morales v. U.S. Att'y Gen.*, 33 F.4th 1303, 1307 (11th Cir. 2022) (cleaned up). We consider our subject-matter jurisdiction de novo. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

We may review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This requirement is jurisdictional and precludes review of a claim that wasn't presented to the board. *Amaya-Artunduaga*, 463 F.3d at 1250. Although not a burdensome requirement, exhaustion requires that the applicant "previously argued the core issue now on appeal before the [board]." *Indrawati*

*v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (quotation omitted).

Burgos Gonzalez argues that he's under a threat of death or kidnapping at the hands of FARC if he's returned to Colombia and that death and kidnapping fall under the Convention's meaning of torture. He also argues that he repeatedly sought help from the authorities in Colombia but was never offered any real protection, and, thus, he had no choice but to leave the country. Finally, he argues that the authorities' failure to provide him with meaningful protection serves as evidence that FARC operates with impunity and that the Colombian government is unwilling and unable to do anything about its crimes. Because Burgos Gonzalez didn't raise these arguments on appeal to the board, the claim is unexhausted and we're precluded from reviewing the finding that he wasn't eligible for relief under the Convention Against Torture. Accordingly, we dismiss Burgos Gonzalez's petition with respect to this issue.

**PETITION GRANTED IN PART AND DISMISSED IN PART.**